IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Jimmy R. Moss,<br><br>                Plaintiff,<br><br>vs.<br><br>City of Abbeville,<br><br>                Defendant. | Civil Action No. 8:09-1859-RBH-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 . [Doc. 26] In his Complaint, the plaintiff alleges that the defendant terminated his employment for the exercise of his rights under the Family Medical Leave Act ("FMLA") of 1993, 29 U.S.C. § 2601 *et seq*. He has also alleged claims for breach of contract and promissory estoppel.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTUAL BACKGROUND

The plaintiff was hired by the defendant in August 1979. (Pl. Dep. at 5.) He eventually became a lineman for the defendant. *Id*. A lineman works on a utility crew performing such tasks as repairing downed power lines. The plaintiff retired from the City in 2006 and, by mutual agreement, was rehired as a lineman. *Id*. at 5-6. Under this arrangement, Moss began receiving retirement benefits while at the same time receiving pay from the City as a lineman. (Pl. Ex. 2.)

In 2007, the plaintiff requested leave from his job under the Family and Medical Leave Act (FMLA) due to a planned hip replacement surgery. His leave began on September 25, 2007. *Id*. at 7. The plaintiff was informed in writing that his leave request was approved and that he was eligible for twelve weeks of FMLA leave. (Def. Ex. 2.) His

twelve weeks of FMLA leave, therefore, expired on December 18, 2007. On December 7, 200, the plaintiff requested that his leave be extended "another 14 weeks for recovery time." (Def. Ex. 3.) This request was granted by the defendant. The extension was pursuant to the defendant's "Extension of Leave without Benefits" policy described on page 24 of its employee handbook. (Def. Ex. 4.)

The plaintiff's physician released him to return to work effective March 4, 2008. (Pl. Dep. at 38.) The plaintiff testified that he was physically unable to work as a lineman until March 4 and even if the City had asked him to come back earlier he medically could not have done so. *Id*. at 36-38.

During the plaintiff's absence, the defendant contends that it became apparent that the plaintiff's contribution to the line crew had both been unsatisfactory and unnecessary or unhelpful. (Wiggins Dep. at 21-28.) Based on these observations, the defendant decided to terminate his employment on the day he returned to work, March 4.

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might

2

return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

3

**DISCUSSION**

**I.     FMLA Retaliation**

The plaintiff has pled a claim for retaliation.  (Compl. ¶ ¶ 21-29.)   The defendant interpreted the claim as potentially including one for interference with the plaintiff's exercise of FMLA rights, as well.  The plaintiff seems to have reiterated, in his response to summary judgment, his intent to plead and argue a retaliation claim only.   (Pl. Resp. at 4.) Accordingly, the Court will limit its consideration to that claim.

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Courts have classified violations under this section as violations of a "proscriptive right," also known as "retaliation" or "discrimination" claims, as opposed to an interference claim. *Yashenko v. Harrah's NC Casino*, 446 F.3d 541, 546 (4th Cir. 2006).  To establish a claim for retaliation under the FMLA, the plaintiff may rely on either a modified version of the *McDonnell Douglas* proof mechanism, *see id.* at 550-51*; Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001), or make recourse to

ordinary principles of proof, using direct or indirect evidence, as well.[1]  *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996).

Under *McDonnell Douglas*, a plaintiff may make out a *prima facie* case of retaliation by establishing that (1) the plaintiff engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action.  *See Yashenko v. Harrah's N.C. Casino, Co.*, 446 F.3d 541, 551 (4th Cir. 2006); *Dodgens v. The Kent Mfg. Co.*, 955 F. Supp. 560, 566 (D.S.C. 1997). The latter of these elements may in some cases be demonstrated by the temporal proximity between the protected activity and the adverse action. *See Yashenko v. Harrah's NC Casino Co.*, 352 F. Supp. 2d 653, 661-62 (W.D.N.C. 2005); *Blankenship v. Buchanon Gen'l Hosp.*, 140 F. Supp. 2d 668, 674 (W.D. Va. 2001).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendants to produce evidence of a "legitimate, non-discriminatory reason" for the termination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendants

---

[1] As the Court has noted before, although it does not appear that the Fourth Circuit has ever expressly held that a plaintiff may rely on the ordinary principles of proof in an FMLA case, it is only a logical conclusion and one consistent with the court's treatment of retaliation cases under every other related statutory scheme. *See, e.g.*, *Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001) (ADA); *Burns*, 96 F.3d 728 (ADEA); *Diamond v. Bea Maurer, Inc.*, 128 Fed. Appx. 968 (4th Cir. 2005) (Title VII). At least one other district court in this circuit has agreed. *See Wemmitt-Pauk v. Beech Mountain Club*, 140 F. Supp. 2d 571, 580 (W.D.N.C. 2001). Moreover, in this District, FMLA retaliation claims are analyzed in accordance with the principles used in Title VII retaliation claims. *See Dodgens*, 955 F. Supp. at 566.

It should also be noted that in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90, (2003), other jurisdictions have permitted plaintiff's to use the mixed-motive framework to demonstrate that retaliation for taking FMLA leave was a "motivating factor" in the termination decision, even if their exist other legitimate, non-discriminatory reasons for termination, like performance*. See Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

Regardless of the articulation, in this case, the plaintiff is not bound to make his proof through the *McDonnell Douglas* scheme exclusively, nor is he required, necessarily, to prove that the nondiscriminatory reasons for his termination were pretext. He may use ordinary principles of proof to demonstrate that his FMLA leave was a motivating factor in the decision to terminate his employment. *See id*.

Nonetheless, he has expressly elected the machine of *McDonnell Douglas*. (Pl. Resp. at 4.)

meet this burden, then the plaintiff must show that the explanation for the decision to terminate his was, in fact, a pretext for intentional retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

Neither party has very specifically tailored its arguments to the *McDonnell Douglas'* paradigm, in the sense that they have argued the evidence without always suggesting or expressly indicating which part of the framework is implicated. Of course, the undersigned is acquainted with the relevance of the evidence at the varying stages of that analytical device and has characterized the parties' respective positions as being related to certain elements of it, even where the parties themselves have been somewhat less precise.

The defendant has met its initial burden at summary judgment by offering that the legitimate and non-discriminatory reason[2] for the termination of the plaintiff's employment was the realization that his contribution was not needed. Specifically, the defendant claims that it recognized, as a result of the plaintiff's absence, that his work-related contributions were not necessary or helpful.[3] (Moss Dep. at 42; Wiggins Dep. at 21-28.) The Director

---

[2] The defendant has not expressly discussed the plaintiff's *prima facie* case. To the extent it intended to imply no causal link, causation may in some cases be demonstrated by the temporal proximity between the protected activity and the adverse action. *Yashenko v. Harrah's NC Casino Co.*, 352 F. Supp. 2d 653, 661-62 (W.D.N.C. 2005); *Blankenship v. Buchanon Gen'l Hosp.*, 140 F. Supp. 2d 668, 674 (W.D. Va. 2001). In this case, it is undisputed that the plaintiff's employment was terminated on March 4, the day he returned from his unpaid leave, and less than three months from when he exhausted his FMLA portion of the same, on December 7, 2007, (Def. Ex. 3). The Fourth Circuit has held that "very little evidence of a causal connection is required to establish a prima facie case . . . ." *Tinsley v. First Union Nat. Bank*, 155 F.3d 435, 443 (4th Cir.1998). Three and five month periods of time have been found sufficiently small to establish a causal connection for purposes of a plaintiff's *prima facie* case. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir.1989) (holding three month time period between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later). Accordingly, the Court is persuaded that the plaintiff has created at least a genuine issue of fact as to the causation element of his *prima facie* case, to the extent it is contested.

[3] It should be initially noted, as the defendant contends, that the sheer fact that "leave permitted the employer to discover the problems does not bar the employer's ability to terminate the deficient employee." *Cracco v. Vitran Express*, 559 F.3d 625, 636 (7th Cir. 2009). Other evidence, as will be discussed, however, creates issues of fact as to the

of the Utilities Department, Mark Hall, reported to Nolan Wiggins, City Manager, that he did not want the plaintiff to return to work. (See R. at 21.) He had allegedly been dissatisfied with the quality and volume of the plaintiff's work and, in fact, reported that the plaintiff's coworkers were not looking forward to his return and felt that he did not do his share of the work. (Wiggins Dep. at 21-28.) Wiggins claims to have observed the crew performing work and had previously noted that the plaintiff did not appear to be performing up to expectations and was more of a detriment than a help. (Wiggins Dep. at 25.) The defendant has put forward evidence that the position was never refilled after the termination of the plaintiff's employment. (Wiggins Dep. at 21-23.)

Obviously, defective job performance constitutes a legitimate, nondiscriminatory reason for adverse action. *See EEOC v. Navy Federal*, 424 F.3d at 407 n.10.

Because the defendant has proffered a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)  As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144. In addition to the temporal proximity between the plaintiff's leave and his termination, discussed *supra* at footnote 2, the plaintiff has put forward substantial evidence of his good performance to undermine the defendant's legitimate reasons for termination. Specifically, he cites to the following:

- A general lack of documentation to corroborate any alleged poor performance (Wiggins Dep. at 24; Pl. Ex. 17);

- The plaintiff's documented work history was all favorable (Wiggins Dep. at 24; Pl. Ex. 17);

- The City Manager, Nolan Wiggins, and the Director of the Public Utilities Department, Mark Hall, who terminated the plaintiff, were not the plaintiff's

---

defendant's real motives.

7

- immediate supervisors and did not observe his work on a daily basis (Wiggins Dep. at 23);

- Wiggins and Hall had previously approved the plaintiff's performance ratings as "meeting" or performing "above standards" for several years before they terminated him based on alleged performance problems (Pl. Ex. 17);

- Hall complained to Wiggins about the plaintiff's low performance within a week of the plaintiff returning from FMLA leave (Wiggins Dep. at 20-21);

- The plaintiff's performance appraisals always met or were above standards (Pl. Ex. 17);

- The plaintiff's performance evaluation for 2005 rated the plaintiff "above standards" (Pl. Ex. 17);

- The plaintiff's last annual performance evaluation before he took FMLA leave in 2007 was for the year 2006, and his 2006 performance appraisal indicates the plaintiff received "standards" and "above standards" in all performance criteria (Pl. Ex. 17);

- Wiggins, who terminated the plaintiff when he returned from FMLA leave, approved and signed plaintiff's 2004, 2005, and 2006 performance appraisals (Pl. Ex. 17);

- Wiggins testified in his deposition he was aware that the plaintiff's performance appraisals all "met standards" and he testified he did not know if the plaintiff had ever been written up during his 29 years working with the City (Wiggins Dep. at 24);

- An affidavit submitted by one of the plaintiff's co-workers who worked closely with the plaintiff for many years indicate the plaintiff's performance was good and he had no more late work orders than anyone else on the crew (Waters Aff).

Prior satisfactory performance evaluations can be evidence that a more recent claim of poor performance is pretext for discrimination. *EEOC v. Navy Federal*, 424 F.3d 397, 408-09 (4th Cir. 2005); *see also Worldwide Network Services, LLC v. Dyncorp Intern.*, LLC, 2010 WL 489477, at *8 (4th Cir. February 12, 2010). Of course, evidence establishing previous adequate performance evaluations can also be irrelevant to issues of pretext, *see Ruff v. Target Stores, Inc.*, 226 Fed. App'x 294, 301-02 (4th Cir.2007), where the "evaluations merely establish that at one point Plaintiff was meeting expectations" but later performance became poor, *Hill v. Belk Stores Services, Inc.*, 2d, 2009 WL 2426314, at *4 (W.D.N.C. August 05, 2009).

Here, however, there was no intervening and poor evaluation between the last satisfactory one, in 2006, and his expiration of leave and termination in 2008. (Pl. Ex. 17.)

8

Rather, the plaintiff had an adequate performance record, prior to the defendant's decision that his performance was not sufficient, but was nonetheless ostensibly fired for deficient performance or contribution. To the Court the evidence paints a conflicting picture of the plaintiff's job performance from which a reasonable jury could find in his favor. *See Navy Federal*, 424 F.3d at 408-09.

As discussed, the defendants have cautiously interpreted the plaintiff's claims as including one for interference. Claims of alleged violations of an employee's prescriptive rights under the FMLA – known as "interference" or "entitlement" claims – arise under 29 U.S.C.A. § 2615(a)(1). That Section states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id*. The defendant has anticipatorily argued that the plaintiff should not have been considered as having been on FMLA during the extension of unpaid leave, from December 18, 2007 through March 4, 2008. Whether or not that extended period of time qualifies as FMLA leave, however, does not seem relevant to the plaintiff's retaliation claim. Whether his FMLA expired on December 18 or March 4, his exercise thereof was sufficiently proximate to his termination that, in addition to evidence that the performance allegations were pretextual, his retaliation claim should survive. Accordingly, the Court, as to this claim, need not reach the issue of whether the extension constituted FMLA leave.

## II.     Breach of Employment Contract and Promissory Estoppel

The plaintiff also claims that the defendant breached its employment contract with him, as expressed in various portions of the defendant's employee handbook. South Carolina law provides that "termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Conner v. City of Forest Acres*, 560 S.E.2d 606, 610 (S.C. 2002); *Williams v. Riedman*, 529 S.E.2d 28, 32 (S.C. Ct. App. 2000). Under certain circumstances, however, an at-will employment arrangement can be modified by an oral promise, *see Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 926 (S.C. 1999),

or by "[m]andatory, progressive discipline procedures . . .," *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005). The South Carolina Supreme Court has stated that "[m]andatory, progressive discipline procedures may constitute enforceable promises." *Hessenthaler*, 616 S.E.2d at 698. "Such procedures typically provide that an employee may be fired only after certain steps are taken." *Id*. The supreme court stated further, "When definite and mandatory, these procedures impose a limitation on the employer's right to terminate an employee at any time, for any reason." *Id*. In order for an employer to not be bound by the mandatory terms of an employee handbook, it must insert a conspicuous disclaimer, in underlined capital letters on the first page, which is signed by the employee. S.C. Code Ann. § 41-1-110.

There are apparently two versions of the defendant's handbook. (Pl. Exs. 10, 15.) The first was revised in November 2007 (Pl. Ex. 10); the plaintiff claims to have received this version and relied upon it. (See Pl. Brief at 9.) The date of revision of the second version is not clear but everyone apparently agrees that the plaintiff did not, and could not have, received this one. (Wiggins Dep. at 35-36; Pl. Brief at 9.) It appears that neither version of the handbook was ever signed as having been received by the plaintiff. *See* S.C. Code 41-1-110. Both versions have a conspicuous disclaimer, bolded and underlined. (Pl. Ex. 10 at 11; Ex. 15 at 24).

The defendant principally argues that because the plaintiff never received a copy of the handbook, it cannot be said that he relied on contractual promises, if any, made therein. This seems an imminently reasonable position. It would be a strange result if the defendant could not rely on the affirmative defense of its disclaimer in the absence of evidence of receipt and agreement by the plaintiff but then the plaintiff could enforce contractual promises never actually received or relied upon. At least one decision of this district court has implied as much. *See Taylor v. Cummins Atlantic*, 852 F. Supp. 1279 (D.S.C. 1994). In *Taylor*, the district court affirmed that for a breach of contract on an employment

handbook, all of the elements of a contract must be present. *Id*. at 1286. It follows, therefore, that no such claim can lie where the employer has not actually distributed or published the handbook to the plaintiff – communicated the offer. *Id*.

The plaintiff, as stated, contends that he relied on the mandatory provisions of the November 2007 version of the handbook, which he claims to have received but which had no disclaimer. (Pl. Resp. at 9; Pl. Ex. 10.) The Court is somewhat confused by these assertions. First, both versions of the handbook, as submitted, in fact, have a bolded and underlined lengthy disclaimer on the cover, which appears to meet the statutory requirements, although they are not signed. (See Pl. Exs. 10, 15.) The defendant has not attempted to argue the effectiveness of either disclaimer. The Court, therefore, will assume, without formally deciding, their ineffectiveness.

Second, and more critically, the Court believes the plaintiff's brief has implied something about his possession and reliance on the November 2007 version, which directly contradicts his deposition testimony. Namely, the plaintiff flatly denied having ever seen a copy of the handbook prior to his termination and that the November 2007 version, produced by him in discovery (Pl. Brief at 9), was not given to him until after his job was terminated. (Pl. Dep. at 9, 13-14 & Def. Ex. 1 attached thereto (see Def. Summ. J. Ex. 4).) The relevant testimony reads as follows:

> Q: So would it be correct to say you probably didn't see the handbook before your termination?
>
> A: I didn't.
>
> . . .
>
> Q: Okay. I'm sorry. So where do you think you got the copy of your handbook that was produced to us?
>
> A: Actually, I asked Ms. Brownlee, Jamie Brownlee, if she could get me a copy of this.
>
> . . .
>
> Q: Okay. When did you ask her to do that?

11

A: This was when I left, I was terminated.

(Pl. Dep. at 13-14.)

As a result, the Court thinks that no reasonable jury could find that the plaintiff relied on either version of the handbook, including the November 2007 one. The question remains whether or not this fact is fatal to the plaintiff's breach of contract claim. The Court believes that it is.

The Court has not been able to identify a South Carolina decision which speaks quite so directly as the District of South Carolina decision, in *Taylor*, discussed above. The defendant has certainly produced a string of state cases, wherein it was expressly acknowledged that the handbook was either actually received by the plaintiff or published to an employee bulletin board or the like. *See Bookman v. Shakespeare Co.*, 442 S.E.2d 183, 183 (S.C. Ct. App. 1994) (company "distributed" a sexual harassment policy); *Leahy v. Starflo Corp.*, 431 S.E.2d 567, 568 (S.C. 1993) (employer "posted" a four-step disciplinary procedure); *Hannah v. United Refrig. Servs., Inc.*, 430 S.E.2d 539, 540 (S.C. Ct. App 1993) (employee "received" two employee handbooks); *Kumpf v. United Tel. Co. of the Carolinas, Inc.*, 429 S.E.2d 869, 870 (S.C. Ct. App. 1993) (employee "received" handbook). But it does not appear that any decision has stated absolutely that awareness or receipt of the handbook is essential.

Instructively, however, South Carolina recognizes that employment contracts created by handbooks are unilateral in quality. *See Towles v. United HealthCare Corp.*,524 S.E.2d 839, 846 (S.C. Ct. App.1999). "A unilateral contract has the following three elements: 1) a specific offer, 2) communication of the offer to the employee, and 3) performance of job duties in reliance on the offer." *Id*. Accordingly, a lack of evidence of a communication of the handbook promises and the plaintiff's reliance thereon would seem to be dispositive.

This district has cited *Towles* for this very proposition. "[T]he mere existence of an employee handbook does not mean that there is an employment contract. For a contract

12

to be created, the employee must be aware of promises in the handbook, must have relied on (and continued work in reliance on) those promises, and the promises must restrict the right to discharge." *Lawrence v. Westinghouse Savannah River Co., Inc.*, 2005 WL 3968031, at *14 & n.83 (D.S.C. March 31, 2005) (Harwell, J.)

Accordingly, the undersigned would agree that to the extent the plaintiff never signed, reviewed, or otherwise received either version of the handbook prior to the termination of his employment, dismissal of his breach of contract claim is justified.

To the extent the district court disagrees, the undersigned would also recommend that the breach of contract claim be dismissed because for each alleged contractual provision in the handbook identified by the plaintiff, the Court either rejects that it restricts discharge or that there is evidence that the promise has, in fact, been breached. "To create a contract, a handbook must also make a promise that the employee is entitled to something related to discharge." *Id*. The handbook promise must restrict the right of an employer to discharge. *Id*. at *4 (citing *Bookman v. Shakespeare*, 444 S.E.2d 183 (S.C. Ct. App.1994). In *Prescott v. Farmers Telephone Co-op., Inc.*, 491 S.E.2d 698, 702 (S.C. Ct. App. 1997) *rev'd on other grounds* 335 S.C. 330, 516 S.E.2d 923 (S.C.1999), the court held that since the plaintiff could not direct the court to any language in the handbook promising pre-termination warnings or other procedures there was no limit to the employer's right to discharge and, therefore, no modification of the employee's at-will employment. *Id*.

The plaintiff contends that the handbook language regarding discipline and leave at issue in the present case contains the following mandatory promises. The Court will address each in turn.

- "In all cases in which formal disciplinary action is taken, complete documentation including a description of the violation and action taken will be forwarded to the City Manager for review. A copy of the action shall also be placed in the employee's personnel folder." (Ex. 10 at 11; Ex. 15 at 14.)

13

To the extent this provision contains a material and mandatory promise, there is no evidence that it was actually violated. The plaintiff does not put forward any evidence that the required documentation was not completed or reviewed by the City Manager, Wiggins (Wiggins Dep. at 6). In fact, all of the evidence suggests the exact opposite. Wiggins has testified that the "Public Utilities Director *filled out the paperwork* and recommended that I approve that [the firing of the plaintiff], and I – *I agreed with his – his recommendation*." (Wiggins Dep. at 19 (emphasis added).) Wiggins was expressly involved in the conversations related to the plaintiff's termination. *Id*. at 21. There does not appear to be any evidence from which a jury could conclude that documentation related to the termination did not exist or that Wiggins did not have opportunity to review that information.

The plaintiff argues that his "immediate supervisor" did not initiate or forward any request for disciplinary action to the City Manager. (See Wiggins Dep. 23-24, 32-34.) There is nothing in the provision that requires the plaintiff's immediate supervisor to forward a request for disciplinary action. A request for termination was made to, and discussed with, Wiggins. *Id*. at 19, 21. The Court does not understand how more was required by the language of the handbook.

Moreover, any promise to place documentation of the action into the employee's personnel file is not a promise which restricts discharge. *See Lawrence*, 2005 WL 3968031, at **4, 14.

- "Any disciplinary action will be in the form of an oral or written warning, suspension, demotion, transfer or discharge. Such actions taken by department heads are subject to final approval of the City Manager." (Ex. 10 at 11; Ex. 15 at 14.)

Again, the Court does not understand how the plaintiff believes this provision was breached or how it restricts discharge. The plaintiff was discharged as contemplated by the provision and Wiggins, the City Manager, approved it. (Wiggins Dep. at 6, 19, 21.)

- If the employee is able to return to work prior to the exhaustion of his extended leave, he will be returned to his previous position of equal or lesser compensation

14

for which he is qualified in which there exists a vacancy which is to be filled. (Pl. Ex. 10 at 11; Ex. 15 at 24.)

The plaintiff contends that this provision entitles him to reinstatement absolutely. To the Court, the provision has not been read in context. Immediately proceeding this sentence and in the same subsection "I," entitled Extension of Leave Without Benefits," the handbook unequivocally states, "This additional leave of absence ***does not entitle the employee to reinstatement*** or to payment of any portion of his health benefits plan premiums by the city." (Pl. Ex. 10 at 11; Ex. 15 at 24.) The handbook, therefore, plainly indicates that during any extension of leave without benefits, beyond the plaintiff's 12 weeks of FMLA, he will have no right to reinstatement. The subsequent language, "will be returned," simply indicates that, in the event reinstatement is permissibly granted, it will be to the plaintiff's former position if there is a vacancy. *See id.*

The plaintiff contends that the word "reinstatement" modifies "health benefits," as in his "health benefits" will not be reinstated, and does not refer to actual reinstatement of employment. Humbly, this is an impossible reading of the provision. Namely, the provision at issue appears in the "Extension of Leave Without Benefits" subsection, under the FMLA section of the handbook. *See id.* That subsection only applies to an employee "who has exhausted his entitlement to leave under the FMLA . . . ." *Id*. Accordingly, the rejection of a right to reinstatement also included in that subsection is plainly meant to contrast the right of reinstatement under the FMLA, as discussed directly above in subsection "h," entitled "Reinstatement."

Accordingly, the Court, as a matter of law, does not interpret any portion of Subsection "I" as creating any mandatory promise of reinstatement. Quite the opposite, the subsection rejects it.

- "At the conclusion of the leave of absence, the employee is entitled to reinstatement to his former position or to a position equivalent to his former position." (Pl. Ex. 10 at 11; Ex. 15 at 24.)

15

This final provision relied upon by the plaintiff, relates to his rights under the FMLA to reinstatement. Because the plaintiff had exhausted his 12 weeks of FMLA as of December 17, 2007 (see Def. Ex. 2 - 12 weeks from effective date), the plaintiff cannot rely upon the above-cited promise of reinstatement because he was not on FMLA leave as of March 4, 2008, he was on an extension of leave without benefits pursuant to the defendant's own policy.

As discussed, however, the plaintiff argues that the 14 week extension should be considered as FMLA leave. Specifically, the plaintiff points to the language of a personnel action form which states that the plaintiff "will come off of Family Medical Leave (FMLA)" when he returned to work on March 4, 2008. (Pl. Ex. 13.) The plaintiff further emphasizes that he was told how to apply for additional FMLA leave by the City Clerk, followed her instructions, applied for additional FMLA leave, and paid his portion of the health insurance premium until he was terminated. (Pl. Exs. 5, 6, 11; Moss Dep. at 48.)

The plaintiff has not directed the Court to significant case law on the effect of such representations and whether an employer can literally extend the applicability of the statutory demands of the FMLA on itself beyond simply the provision of comparable benefits pursuant to its own unpaid leave policy. In other words, can an employer give the FMLA actual effect and force after the 12 weeks? The Court has not found any authority directly on point, although it would seem improbable that none exists. At least one district court in this Circuit, has answered the question in the negative. *See Drumheller v. Central Virginia Elec. Co-op.*, 2006 WL 2403334 (W.D. Va. August 18, 2006). In *Drumheller*, the court concluded "once the twelve week period has expired, the time to claim entitlement to benefits under the FMLA cannot be enlarged or recaptured because no violation of the Act has occurred within the statutory benefit period." *Id*. at *7. That is the undersigned's intuition.

16

Alternatively, although not so precisely framed, the plaintiff may mean to argue that even if he was not an "eligible" employee entitled to actual FMLA protection, the defendant is equitably estopped from raising that defense because of representations to the plaintiff that he was eligible for additional FMLA. As the defendant recognizes, the United States Supreme Court, in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002), alluded to the type of showing an employee would have to make to bring an actionable claim of estoppel under the FMLA for misrepresentations about it. Namely, the critical inquiry is whether or not the employee would have taken leave in the absence of the misrepresentation concerning FMLA leave. *Id*. at 90. Since *Ragsdale*, courts have concluded that "[w]hen an employee fails to adduce evidence that she could have returned to work earlier or that she would have structured her leave differently had her employer properly informed her of her FMLA eligibility, the employer is entitled to summary judgment." *Weidner v. Unity Health Plans Ins. Corp.*, 606 F. Supp. 2d 949, 958 (W.D. Wis. 2009) (string citing cases); *Miller v. Personal-Touch of Virginia, Inc.*, 342 F. Supp. 2d 499, 515 (E.D. Va.2004).

The plaintiff in this case has adduced no evidence from which a reasonable jury could infer that he would have done things differently had he not been allegedly misinformed about his FMLA eligibility. *See Weidner,* 606 F. Supp. 2d at 958. He has presented no evidence that he would have or could have returned to work in December 2007 when his 12 weeks expired or at any time prior to March 4, 2008. *See id*. The defendant, in contrast, has offered the plaintiff's deposition admission that he medically could not have returned to work prior to March 4. (Pl. Dep. at 36-38.) He admitted that he could not have performed the work and that his doctor had not released him to work until that date. *Id*. at 37-38.

Accordingly, the plaintiff cannot use estoppel as grounds to impose the FMLA statutory requirements on the defendant for the period from December 18, 2007 to March 4, 2008, such that the above-cited handbook provision is implicated and effective. He was

terminated outside of the FMLA period. As a result, the defendant could not have breached the provision, even if it were found to be contractually binding.

For all of these same reasons, the plaintiff's alternative promissory estoppel[4] theory should fail. In his response brief to summary judgment, he emphasizes the same set of allegedly unambiguous promises contained in the defendant's handbook. (Pl. Resp. at 9-12.) The plaintiff argues that the handbook contained "promises regarding discipline and leave upon which Plaintiff reasonably relied and which were not followed."[5] *Id*. at 11. The Court has already rejected that the plaintiff could have relied on promises he never possessed and further has rejected that the identified provisions were ever breached or that any such breach causally effected discharge. In other words, he has not shown reliance or any injury resulting from his alleged reliance. *See Powers Construction*, 322 S.E.2d at 33. The claim should be dismissed.

---

[4] The elements of a promissory estoppel claim in South Carolina are (1) a promise unambiguous in its terms; (2) reasonable reliance on the promise by the party to whom it was made; (3) the reliance is expected and forseeable by the party who made the promise; and (4) injury in reliance on the promise. *Powers Construction Co. v. Salem Carpets, Inc.*, 322 S.E.2d 30, 33 (S.C. App. 1984).

[5] The plaintiff has not in any serious respect argued a promissory estoppel theory based on reliance on the good consequences of his prior satisfactory work performance, as the Complaint alleges and the defendant anticipates. The plaintiff has simply argued that he was entitled to rely on the promises in the handbook and, regardless of whether they constitute a contract, the defendant was obligated to fulfill them.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment [Doc. 26] be GRANTED, in part, and DENIED, in part. Specifically, the Court recommends that the motion should be DENIED as to the FMLA retaliation claim but GRANTED as to the breach of contract and promissory estoppel claims.

IT IS SO RECOMMENDED.

                                        s/Bruce Howe Hendricks
                                        United States Magistrate Judge

June 10, 2010
Greenville, South Carolina