IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Jimmy R. Moss, ) | Civil Action No.: 8:09-cv-01859-RBH |
|     Plaintiff, ) | |
| v. ) | **ORDER** |
| City of Abbeville, ) | |
|     Defendant. ) | |

Pending before the Court is Defendant City of Abbeville's ("City") Objections to the Report and Recommendation ("R&R") of United States Magistrate Judge Bruce Howe Hendricks. This matter is before the Court upon the Plaintiff's Complaint, which alleges that the City terminated his employment for the exercise of his rights under the Family Medical Leave Act ("FMLA") of 1993. He also alleges claims for breach of contract and promissory estoppel. In the R&R, the Magistrate Judge recommends granting the City summary judgment as to the breach of contract and promissory estoppel claims, but denying summary judgment as to the FMLA retaliation claim.

**Procedural History and Factual Background**

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.), this matter was referred to United States Magistrate Judge Bruce Howe Hendricks for pretrial handling. On February 26, 2010, the City filed a Motion for Summary Judgment [Docket #26]. On March 15, 2010, the Plaintiff filed a Response in Opposition. Subsequently, the City filed a Reply on March 22, 2010. The Magistrate Judge issued an R&R on June 10, 2010, in which she recommends that the Court grant the City's Motion for Summary Judgment as to the breach of contract and promissory estoppel claims, but deny summary judgment as to the FMLA retaliation claim. The City filed timely objections to the R&R challenging the Magistrate Judge's

recommendation that the Court deny it summary judgment on the Plaintiff's FMLA retaliation claim. The Plaintiff has filed a Response to the City's objections.

The facts in this matter are undisputed. The Plaintiff was hired by the City in August 1979. He eventually became a lineman for the City, working on a utility crew and performing such tasks as repairing downed power lines. In 2007, the Plaintiff requested leave from his job with the City under the FMLA due to a planned hip replacement surgery. His leave began on September 25, 2007. His twelve weeks of FMLA leave, therefore, expired on December 18, 2007. On December 7, 2007, the Plaintiff requested that his leave be extended "another 14 weeks for recovery time." This request was granted by the City and was provided for in the City's "Extension of Leave Without Benefits" policy described in its employee handbook:

> An employee who has been completely unable to perform the duties of his position due to his own disability and who has exhausted his entitlement to leave under the FMLA by taking 12 consecutive weeks of leave will, upon written application, be granted an additional 14 weeks of leave. This additional leave of absence does not entitle the employee to reinstatement or to payment of any portion of his health benefits plan premiums by the City.

*Id.* at 24. The Plaintiff's physician released him to return to work effective March 4, 2008. During the Plaintiff's absence, the City contends that it became apparent that the Plaintiff's contributions to the utility crew had been unhelpful and unsatisfactory. The City terminated the Plaintiff's employment on the day he returned to work, March 4, 2008.

## **Standard of Review**

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the

Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only general and conclusory objections that do not direct the Court to a specific error in the Magistrate Judge's proposed findings and recommendations. *Orpiano v. Johnson,* 687 F.2d 44, 47-48 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005).

## **Legal Standard for Summary Judgment**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (2009). The movant has the burden of proving that summary judgment is appropriate. Once the movant makes the showing, however, the opposing party must respond to the motion with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is

3

a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp.,* 477 U.S. at 322.

## **Discussion**

The City objects to the Magistrate Judge's recommendation that this Court deny the City summary judgment as to the Plaintiff's FMLA retaliation claim. Under the FMLA, an employee is entitled to a total of twelve weeks of leave during any twelve-month period because of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2006). Further, such employee has a right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position." *Id.* § 2614(a)(1)(A)-(B). In addition to providing theses substantive rights to an employee, the FMLA also provides "*proscriptive* provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006). While the FMLA does not specifically forbid discharging an employee in retaliation for taking FMLA leave, 29 C.F.R. § 825.220(c) states that employers are prohibited from discriminating or retaliating against employees or prospective employees who have exercised FMLA leave and that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." The Fourth Circuit has held that taking FMLA leave is a protected activity under the FMLA and recognizes a cause of action for retaliation where an employee alleges that he was discharged for taking FMLA leave. *Yashenko*, 446 F.3d at 546-51

4

("Known as 'retaliation' or 'discrimination' claims, causes of action alleging violations of these proscriptive rights arise under 29 U.S.C.A. § 2615(a)(2), which states that '[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.'"); *see Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp. 2d 668, 672 (W.D. Va. 2001) (explaining that courts, including the Fourth Circuit, have interpreted § 825.220(c) as creating a cause of action for retaliation where an employee alleges that he was discharged for taking FMLA leave).

The Fourth Circuit analyzes a claim that an employer discharged an employee for taking leave permitted by the FMLA as a retaliation claim under the *McDonnell Douglas* burden-shifting framework. *Yashenko*, 446 F.3d at 550-51 ("FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas*"). Accordingly, to succeed on his retaliation claim, the Plaintiff must first establish a prima facie case of retaliation by showing that: (1) "he engaged in protected activity," (2) "the employer took adverse action against him," and (3) "the adverse action was causally connected to the [P]laintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). The Plaintiff may establish a prima facie case of causality by showing close temporal proximity between the adverse employment decision and the protected activity. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989) (While evidence as to the closeness in time "far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality."). The Plaintiff also may show a causal connection by showing that he was performing at a satisfactory level prior to his FMLA leave. *See Sharpe v. MCI Telecommunications Corp.,* 19 F. Supp. 2d 483, 488 (E.D.N.C. 1998). Once he establishes the elements of a prima facie case, the burden shifts to the City to proffer evidence of a legitimate, non-discriminatory reason for the adverse employment

action. *Yashenko*, 446 F.3d at 551. If the City carries its burden, the Plaintiff then bears the burden to prove by a preponderance of the evidence that the City's "proffered explanation is pretext for FMLA retaliation." *Nichols v. Ashland Hosp. Corp.,* 251 F.3d 496, 502 (4th Cir. 2001). In order for the Plaintiff to show that the City's proffered reason for the adverse employment action is pretextual "the weakness of the employer's explanation, standing alone, is not sufficient; rather, the employee must produce affirmative evidence of discriminatory motive or affirmative evidence that the employer's proffered explanation is simply unworthy of credence." *Blankenship*, 140 F. Supp. 2d at 674.

It is undisputed that the Plaintiff engaged in a protected activity and adverse employment action was taken against him, as he took leave under the FMLA and his employment was terminated. However, in order to establish a prima facie case of retaliation, the Plaintiff must demonstrate there was a causal connection between his taking FMLA leave and his termination. To do show, the Plaintiff must show that he was terminated "*because* [he] engaged in protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). "[A] casual connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson,* 380 F.3d 209, 213 (4th Cir. 2004). The Plaintiff offers evidence of the close temporal proximity between his leave of absence and the loss of his job to show a causal connection. Specifically, it is undisputed that the Plaintiff's employment was terminated on March 4, 2008, which was the day he returned from his extended leave and less than three months from when he exhausted his FMLA leave. The Fourth Circuit has held two, three, and five month periods of time sufficiently close in temporal proximity to establish a causal connection for purposes of a plaintiff's prima facie case. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that a two-month and two-week lapse between the protected activity

6

and the alleged retaliation was not excessive because the employer had committed to ongoing reviews of the plaintiff's performance and indicated its intent not to terminate the school employee before the end of the academic year); *Williams,* 871 F.2d at 457 (holding three month period between protected activity and termination sufficient to satisfy the causation element of the prima facie case of retaliation); *Carter v. Ball,* 33 F.3d 450, 460 (4th Cir. 1994) (finding causal link between filing of retaliation complaints and the plaintiff's demotion five months later for purposes of the plaintiff's prima facie case). There also appears to be evidence in the record that he was performing at a satisfactory level prior to his FMLA leave. *See Sharpe,* 19 F. Supp. 2d at 488. Thus, the Court finds that the Plaintiff has established a prima facie case.

The City has satisfied its burden by proffering evidence of a legitimate, non-discriminatory reason for terminating the Plaintiff: poor job performance. Specifically, the City asserts that it was determined prior to March 4, 2008, that the Plaintiff would not be returned to work because the Director of the Utilities Department had been dissatisfied with the quality and volume of the Plaintiff's work, and the utility crew appeared to perform better in his absence. According to the deposition of City Manager Nolan Wiggins, the Plaintiff was never replaced and the crew is performing better with three linemen than it did with four. *Wiggins Dep.* pp.21-23.

In order for the Plaintiff to show that the City's proffered reason for the adverse employment action is pretextual "the employee must produce affirmative evidence of discriminatory motive or affirmative evidence that the employer's proffered explanation is simply unworthy of credence." *Blankenship*, 140 F. Supp. 2d at 674. The "Plaintiff argues that the temporal proximity coupled with witness testimony and the lack of evidence to support [the City's] alleged legitimate business reason for termination creates issues of fact for a jury to decide." *Response to Objections,* p.4. In addition to the close temporal proximity between the Plaintiff's FMLA leave of absence and his termination, the Plaintiff has put forth evidence of

7

good performance to undermine the defendant's non-discriminatory explanation for termination. Most notably, the Plaintiff presents the following evidence: (1) a general lack of documentation to corroborate any alleged poor performance, as the Plaintiff's documented work history was favorable; (2) that the Director of the Utilities Department and the City Manager had approved the Plaintiff's performance ratings as "meeting" or performing "above standards" for several years prior to terminating him based on alleged poor job performance; (3) the Plaintiff's performance evaluation for 2005 rated the Plaintiff's performance "above standards"; (4) the Plaintiff's last annual performance evaluation before he took FMLA leave, which was for 2006, indicated that the Plaintiff's performance received "standards" and "above standards" in all criteria; (5) an affidavit submitted by one of the Plaintiff's crew members who worked closely with the Plaintiff for many years indicated that the Plaintiff's performance was good and he had no more late work orders than anybody else on the crew; and (6) the fact that the Plaintiff was never disciplined or cited for poor work performance in his twenty-nine years of employment with the City.

In its objections, the City attacks some of the Plaintiff's evidence of pretext. First, the City cites a Second Circuit case for the proposition that a three month gap between FMLA leave and termination is not sufficiently close temporal proximity to give rise to an inference of pretext. However, the Court finds the Second Circuit case unpersuasive in light of other Fourth Circuit decisions. *See, e.g., Warren v. Halstead Indus., Inc.,* 802 F.2d 746, 758 (4th Cir. 1986) (noting that close temporal proximity combined with other relevant evidence can give rise to an inference of pretext); *accord Blasic v. Chugach Support Servs., Inc.,* 673 F. Supp. 2d 389, 400 (D. Md. 2009) (finding that an adverse employment action closely following protected activity is one of several factors which, when combined, may support an inference of pretext). Additionally, the City argues the "Magistrate Judge's finding of pretext because [the Plaintiff's] immediate supervisor played no role in the discharge decision is puzzling" and the Magistrate Judge "failed to recognize

8

that the Manager's dissatisfaction was inexorably linked to the discovery that the City simply did not need [the Plaintiff]." The City also notes that it did not hire anyone to replace the Plaintiff on the utility crew. Finally, the City argues that the Plaintiff's extension of leave from December 18, 2007, through March 4, 2008, was non-FMLA leave and therefore negates the Plaintiff's FMLA retaliation claim.[1] However, the fact that the Plaintiff took FMLA leave in sufficiently close temporal proximity to his termination, combined with the Plaintiff's additional evidence that contradicts the City's non-retaliatory poor performance allegation, supports an inference of pretext.

Prior satisfactory performance evaluations can be evidence that a more recent claim of poor performance is pretext for discrimination. *See EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 408-09 (4th Cir. 2005); *Worldwide Network Servs., LLC v. Dyncorp Int'l, LLC,* 2010 WL 489477, at *8 (4th Cir Feb. 12, 2010). In the instant matter, there were no intervening, poor performance evaluations between the last satisfactory one in 2006 and the Plaintiff's subsequent termination when he returned to work from FMLA and extended non-FMLA leave in March 2008. Instead, the evidence shows that the Plaintiff was terminated despite the fact that he had a satisfactory performance record until the date of his termination. Thus, the City's assertion that the Plaintiff was terminated for poor job performance appears unworthy of credence. A reasonable jury could conclude that the City's stated reason for termination is merely pretext for retaliation for the Plaintiff's taking FMLA leave.

In addition to the Plaintiff's alleged poor performance, the City argues that the City simply discovered that it did not need the Plaintiff during his extended absence, as the crew was

---

[1] The City cites to *Shaw v. Electrolux Home Prods.,* No. 8:08-221-RBH, 2009 WL 3063009 (D.S.C. Sept. 21, 2009) in support of this proposition. However, that case is distinguishable in that the Plaintiff in *Shaw* alleged a claim for interference in violation of the FMLA, not a claim for retaliation as in the instant matter. *Id.* at *12 ("The plaintiff has not pled a retaliation claim based on any termination of his employment for exercising his rights under the FMLA.").

9

performing better with three linemen than it did with four. Accordingly, the City has not filled the Plaintiff's position. This jury argument appears to have some plausible merit, but the jury, not the Court, must be the final arbiter on this question of fact. In the Court's view, the City's leap to a poor performance reason for termination has far less credibility than its argument that it simply did not need a fourth lineman on the crew. But again, a jury can make credibility determinations and decide these questions of fact. Viewing the facts and inferences to be drawn from the evidence in the light most favorable to the Plaintiff, the Court concludes that a genuine issue of material fact exists as to whether the City terminated the Plaintiff in retaliation for his taking FMLA leave, and the Plaintiff's retaliation claim survives summary judgment.

Having thoroughly reviewed the entire record, the City's objections, and the applicable law, the Court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. As such, the Court agrees with the recommendations of the Magistrate Judge.

## **Conclusion**

Based on the foregoing, it is **ORDERED** that the Magistrate Judge's R&R is adopted and incorporated herein by reference, and the Court **GRANTS in part, DENIES in part,** the City's Motion for Summary Judgment [Docket #26]. Specifically, the Court grants the City summary judgment as to the breach of contract and promissory estoppel claims, but denies summary judgment as to the FMLA retaliation claim.

The Court notes also that the Scheduling Order required mediation by April 26, 2010. *Scheduling Order,* ¶ 10. No lawyer asked for an extension of this Court-ordered deadline, although counsel for the Plaintiff at least filed an ADR Statement and Certification on March 26, 2010, indicating that she had "twice discussed the advisability and timing of ADR with opposing counsel" and opposing counsel "indicated he d[id] not wish to mediate this matter until after

summary judgment is ruled on." Counsel for the City failed to file an ADR Statement and Certification in violation of the Scheduling Order and certainly filed nothing contradicting counsel for the Plaintiff's statements. Finally, no permission was given by the Court to extend this mediation deadline; this Court did not authorize counsel to delay mediation of the case.[2] Counsel is on notice henceforth that any intentional disregarding of the Court's orders will subject one to sanctions by this Court. *See, e.g., Forstmann v. Culp,* 114 F.R.D. 83, 85 (M.D.N.C. 1987) (The Scheduling Order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

Counsel are now **ORDERED** to mediate this case by August 1, 2010. Accordingly, the Scheduling Order is now revised to indicate that Mediation is to be completed by August 1, 2010 (¶ 10); Motions in limine must be filed at least three weeks prior to September 15, 2010 (¶ 12); and this case is subject to being called for jury selection and/or trial on or after September 15, 2010 (¶ 14).

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
July 15, 2010

---

[2]The Court notes that a "Consent Motion to Stay Scheduling Order" was granted on June 9, 2010, staying the remaining deadlines until a ruling on the Motion for Summary Judgment; however, the deadline for mediation had already passed.

11